UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JORGE VALENCIA,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/11/2020

15 Cr. 163 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Jorge Valencia, a prisoner serving his sentence at FCI Danbury ("Danbury") moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A). Def. Mot., ECF No. 74. He asks that he be "immediately released from custody (even if this includes spending his remaining custodial sentence on home confinement)." *Id.* at 4. When Valencia filed his motion, an appeal from his judgment of conviction was pending before the Second Circuit, and this Court concluded that it lacked jurisdiction to decide the motion. ECF No. 79. On May 7, 2020, the Second Circuit granted his motion for a limited remand for the purposes of this Court ruling on the motion for compassionate release.[1] ECF No. 80.

For the reasons stated below, the motion is GRANTED, and Valencia's remaining term of imprisonment is reduced to time served.

## BACKGROUND

On November 7, 2016, Valencia pleaded guilty to conspiracy to distribute, and possess with intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A) and 846. *See* ECF Nos. 15, 42. Valencia was sentenced to 120 months' imprisonment, the mandatory minimum, to be followed by five years of supervised release. ECF No. 65; *see* 21 U.S.C.

---

[1] Simultaneous with the motion for a limited remand, Valencia's appellate counsel submitted a motion to withdraw on the basis of a conflict of interest, which the Second Circuit granted. ECF No. 80. The Second Circuit's order further directed this Court to appoint new counsel on remand. *Id.* However, Valencia's trial counsel has explained that he does not share appellate counsel's conflict of interest, does not wish to be relieved, and continues to represent Valencia in this Court. ECF No. 81. Accordingly, there is no need for the Court to appoint new counsel at this time.

§ 841(b)(1)(A). Valencia is serving his sentence at Danbury, where, as of April 20, 2020, at least 29 inmates and 38 staff have tested positive for COVID-19, and one inmate has died. Def. Mot. at 2. Another court in this district has remarked that "[t]he danger posed by COVID-19 is particularly acute at [Danbury] because "the facility [is] in a tie for first place for total cases among all BOP facilities nationwide." *United States v. Paciullo*, No. 15 Cr. 834, 2020 WL 1862252, at *1 (S.D.N.Y. Apr. 14, 2020).

Valencia's medical records indicate that he has heart disease, high blood pressure, epileptic seizures, and persistent anxiety. Def. Mot at 2. He suffered a heart attack in 2018 that required hospitalization. *Id.* Valencia currently takes a number of medications for his heart condition, as well as for anxiety. *Id.* His heart disease puts him at high risk for severe complications from COVID-19. *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html; *see also* Def. Mot. at 2 (citing medical source indicating that Valencia's risk of death from COVID-19 could be as high as 10%).

On April 19, 2020, Valencia submitted a request to the warden of Danbury seeking compassionate release. Def. Mot. at 2. On April 20, 2020, his counsel followed up with a second request. *Id.*

## ANALYSIS

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Valencia must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses each requirement in turn.

I. Exhaustion

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)). There is a difference, however, between "truly jurisdictional rules, which govern a court's adjudicatory authority, and nonjurisdictional claim-processing rules, which do not." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks and citations omitted).

The Court concludes that Section 3582(c)(1)(A) does not impose a jurisdictional requirement—in other words, a defendant's failure to exhaust does not deprive the Court of the power to hear his case altogether.[2] Section 3582(c)(1)(A)'s limitations control which party may move for relief (the BOP or the defendant), and when. It "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [federal] courts." *Zipes v. Trans World Airlines, Inc.*, 455

---

[2] This Court has held in the past that Section 3582(c)(1)(A)'s exhaustion requirement is waivable, without passing on the question of whether it is jurisdictional. *See United States v. Zukerman*, No. 16 Cr. 194, 2020 WL 1659880, at *2 n.1 (S.D.N.Y. Apr. 3, 2020); *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 n.1 (S.D.N.Y. Apr. 1, 2020). In those cases, the Court determined that it could deem Section 3582(c)(1)(A)'s administrative exhaustion requirement satisfied, and so did not need to address the question of whether it would lack jurisdiction when that requirement was not met. This order continues to embrace that theory, but also relies on an alternative holding concerning equitable relief from Section 3582(c)(1)(A)'s 30-day waiting period. The Court must, therefore, address the issue of its subject-matter jurisdiction.

U.S. 385, 394 (1982), but rather "requir[es] that the parties take certain procedural steps at certain specified times," and therefore "ranks as a mandatory claim-processing rule," not a jurisdictional one. *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017).

The question remains, however, whether Section 3582(c)(1)(A)'s procedural requirements bar Valencia's motion. It has been only 22 days since he submitted his request to Danbury's warden, and the BOP has not issued a decision.

### A. Waiving Exhaustion Under Administrative Law Principles

Courts in this circuit, including this Court, have held that Section 3582(c)(1)(A) effectively imposes a requirement to exhaust administrative remedies, which may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. McCarthy*, No. 17 Cr. 230, 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (internal quotation marks and citation omitted); *see, e.g.*, *Zukerman*, 2020 WL 1659880, at *2; *United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *Perez*, 2020 WL 1546422, at *2; *see also United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

That is because "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). Even when a statute requires a party to submit a claim to an agency, the party is not required to run the gauntlet of the agency's administrative procedures—and perhaps wait for an indefinite period of time—before coming to court under three circumstances. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be

4

incapable of granting adequate relief." *Id.* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

The Government argues that the Court cannot rely on the Second Circuit's statement in *Washington* that "[e]ven where exhaustion is seemingly mandated by statute . . . the requirement is not absolute," because that statement was not essential to the court's holding, which addressed a judge-made exhaustion requirement rather than a statutory one. Gov't Opp. at 6–7, ECF No. 77. But that language is illustrative of a long-established principle in administrative law. When a statute requires exhaustion of an agency's administrative procedures, but the agency is empowered to determine what those procedures will be (and so to waive their completion), a court may also waive complete exhaustion of the procedures in certain extraordinary cases when doing so is consistent with congressional intent as expressed in the statute. For example, in the context of challenges to Social Security Administration procedures, the Supreme Court has held that though 42 U.S.C. § 405(g) requires claimants to obtain a "final decision" from the agency before going to court, "the Secretary has discretion to decide when to waive the exhaustion requirement," and that courts may do so under some circumstances as well, because "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976) (internal quotation marks omitted)); *see also, e.g.*, *New York v. Sullivan*, 906 F.2d 910, 917 (2d Cir. 1990) (holding that "[a] court may waive the need to exhaust administrative remedies under appropriate circumstances" in challenges to Medicare procedures).[3]

---

[3] The Supreme Court permits wavier of § 405(g)'s exhaustion requirement where the claim at issue is "entirely collateral to [a] substantive claim of entitlement," and "the claim rest[s] on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Bowen*, 476 U.S. at 483 (internal quotation marks and citation omitted). Some courts have questioned whether a claim under Section 3582(c)(1)(A) meets the requirement of being "collateral to the substantive claim of entitlement." *See, e.g.*, *United States v. Ogarro*, No. 18 Cr. 373-9, 2020 WL 1876300, at *4 (S.D.N.Y. Apr. 14, 2020). Of course, there is no reason that the requirements for exhaustion—which reflect Congress' intent as embodied in the language of a particular statute—should be identical under the Social Security Act and the First Step Act. *See Bowen*,

That is not to say that courts may deem statutory exhaustion requirements satisfied simply because doing so appears to be fair. The Supreme Court has been explicit that for "statutory exhaustion provision[s] . . . Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). "Time and again, [the Supreme] Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Id.* But the Court is convinced that the First Step Act is the rare statute where Congress does intend for courts to be able to deem exhaustion of the BOP's administrative review procedures waived—at least in the extraordinary circumstance where requiring a defendant to complete the process or wait for 30 days before bringing his motion for compassionate release would entirely defeat the ability of the Court to grant relief. The provision allowing defendants to bring motions under Section 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In a case where requiring exhaustion risks a defendant's infection with a deadly disease, however, administrative exhaustion would defeat, not further, the policies underlying Section 3582(c).

In *United States v. Haney*, another court in this district engaged in exhaustive analysis of the First Step Act's text and purpose, and determined that the statute's requirement that a movant "<u>either</u> . . . exhaust administrative remedies <u>or</u> simply . . . wait 30 days after serving his petition on the warden of his facility . . . unquestionably reflects . . . congressional intent for the defendant to

---

476 U.S. at 484. But in any event, it is important to recognize that under Section 3582(c)(1)(A) a request made to the BOP and a motion for compassionate release made to a court do *not* seek identical relief. The former concerns a matter of procedure: will the BOP bring a motion on the inmate's behalf, or must he bring it himself? The latter concerns the substance of the defendant's entitlement to release under the statute's criteria.

have the right to a meaningful and prompt <u>judicial</u> determination of whether he should be released." No. 19 Cr. 541, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (internal quotation marks and citation omitted); *cf. United States v. Scparta*, 18 Cr. 578, 2020 WL 1910481, at *5, *8 (S.D.N.Y. Apr. 20, 2020) ("[T]his an exhaustion requirement like no other of which the [c]ourt is aware," and "the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to . . . exceptions.").

The Court agrees with the conclusion that "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late." *Haney*, 2020 WL 1821988, at *4.

Given Valencia's heart condition and the prevalence of COVID-19 at the facility where he is serving his sentence, all three of the rationales for excusing exhaustion apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Valencia] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see Bowen*, 476 U.S. at 483 (1986) (holding that "irreparable injur[y]" justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *Sullivan*, 906 F.2d at 918 (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"); *see also, e.g.*, *Haney*, 2020 WL 1821988, at *4 (holding that § 3582(c)(1)(A)'s exhaustion requirement

7

could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19); *Zukerman*, 2020 WL 1659880, at *3 (same); *Perez*, 2020 WL 1546422, at *2–3 (same).  Here, even a few weeks' delay carries the risk of catastrophic health consequences for Valencia.  The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

Accordingly, the Court holds that waiver of the exhaustion requirement is justified under established principles of administrative law.

### B.  Excusing Exhaustion Under Equitable Principles

Other courts in this circuit have approached the problem differently.  Instead of holding that principles of administrative law allow a court to waive the requirement that a defendant "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," 18 U.S.C. § 3582(c)(1)(A), they have held that principles of equity allow a court to excuse the requirement that a defendant wait for "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," *id.*  Treating that latter requirement as a statutory claim-processing rule, a number of courts have concluded that "the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions," similar to statutes of limitations or deadlines imposed by federal rules of procedure.  *Scparta*, 2020 WL 1910481, at *8; *see, e.g.*, *United States v. Bess*, No. 16 Cr. 156, 2020 WL 1940809, at *6–7 (W.D.N.Y. Apr. 22, 2020), *appeal filed*, No. 20-1491 (2d Cir. May 6, 2020); *United States v. Russo*, 16 Cr. 441, 2020 WL 1862294, at *6–7 (S.D.N.Y. Apr. 14, 2020).

As those opinions explain, the Supreme Court has "reserved [decision on the question of] whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver

and forfeiture, *Hamer*, 138 S. Ct. at 18 n.3, and the Second Circuit has held that "claim-processing rule[s]" are "subject to equitable considerations such as waiver, estoppel or futility." *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (internal quotation marks omitted). As already discussed, a close examination of the First Step Act reveals a patent congressional intent of timely judicial review for compassionate release claims. In a circumstance where every additional day of confinement poses the risk of severe or even fatal infection, "[i]t would be ironic, and certainly inconsistent with congressional intent, for the thirty days to serve as a substantial obstacle to effective judicial relief." *Russo*, 2020 WL 1862294, at *6. Thus, courts should exercise their equitable authority to excuse the 30-day waiting period when "the movant has been pursuing his rights diligently, the BOP has not been able to satisfy its obligation to act expeditiously (including through appeals) or to assure the Court it can do so, and an extraordinary circumstance, not of the movant's own making, stands as a substantial obstacle to him obtaining the meaningful judicial review that Congress intended." *Id.* at *7.

That reading of the First Step Act is persuasive, and provides a plausible alternative basis for setting aside Section 3582(c)(1)(A)'s exhaustion requirement in this case. Valencia has diligently pursued his rights, having filed a request with Danbury's warden on April 19, 2020. The BOP has taken no action on that request, despite the extraordinary threat posed by COVID-19 at Danbury, and Valencia's particular susceptibility to the virus. And the possibility that Valencia might not get meaningful judicial review, because the COVID-19 outbreak could reach him before this Court has an opportunity to pass on his application, is all too real.

Accordingly, the Court holds in the alternative that equitable principles call for excusing Section 3582(c)(1)(A)'s 30-day waiting period.

II.     Extraordinary and Compelling Reasons for Release

The Court also finds that Valencia has set forth "extraordinary and compelling reasons" to modify his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), because of the grave risk that COVID-19 poses to a person with substantial underlying health problems.

The authority to define "extraordinary and compelling reasons" has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, cmt. n.1. *See United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4–5 (S.D.N.Y. Jan. 8, 2020). Two components of the definition are relevant. First, extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Second, U.S.S.G. § 1B1.13 cmt. n.1(D) authorizes release based on "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."

Valencia's documented serious heart condition satisfies either requirement. The Centers for Disease Control and Prevention explains that "[s]erious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension, may put people at higher risk for severe illness from COVID-19," because "COVID-19, like other viral illnesses such as the flu, can damage the respiratory system and make it harder for your heart to work. For people with heart failure and other serious heart conditions this can lead to a worsening of COVID-19 symptoms." *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions. Valencia has submitted evidence that his risk of death if infected could be as high as one in ten. *See* Def. Mot. at 2.

10

Courts in this circuit have held that compassionate release is justified under such circumstances. *See, e.g.*, *United States v. Park*, No. 16 Cr. 473, 2020 WL 1970603, at *3–4 (S.D.N.Y Apr. 24, 2020) (ordering release of inmate with respiratory issues because of "the combination of [her] preexisting medical issues that put her at heightened risk of becoming seriously ill from or succumbing to the virus and the worsening outbreak at [Danbury]"); *Bess*, 2020 WL 1940809, at *8 (modifying sentence for defendant with "severely limited heart function" from facility with COVID-19 outbreak); *United States v. Sawicz*, No. 08 Cr. 287, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (granting compassionate release motion based in part on "[t]he COVID-19 outbreak at [Danbury], combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension"); *see also Zukerman*, 2020 WL 1659880, at *5 (collecting cases).

The Government does not dispute that Valencia suffers from a heart condition and hypertension, which are "concerning with respect to COVID-19." Gov't Opp. at 9. But the Government argues that granting relief would nonetheless be inappropriate given the seriousness of Valencia's offense, and the approximately three years remaining on his sentence. *Id.* Valencia's conviction was significant: he possessed a large quantity of methamphetamine, and intended to distribute it. Though he had a negligible criminal history, and had never been involved in violence prior to his conviction, the Court imposed a ten-year carceral sentence, reflecting the seriousness of his conduct. *See* Sentencing Tr. at 16:8–20, 19:2–17, ECF No. 68. The sentence imposed, however, did not take into account post-sentencing developments in Valencia's medical condition or the unhealthy environment in which he is now imprisoned. Since sentencing, Valencia suffered a heart attack that required hospitalization, and must take a number of medications for his heart disease and anxiety. Def. Mot. at 2. And Danbury, his place of confinement, has become a hotbed of COVID-

19, a virus that poses a deadly threat to individuals in his condition. The Court did not intend that Valencia's sentence "include incurring a great and unforeseen risk of severe illness or death" brought on by a global pandemic. *United States v. Rodriguez*, No. 2:03 Cr. 271-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020).

Accordingly, the Court finds that Valencia has demonstrated extraordinary and compelling reasons justifying a modification of his term of imprisonment.

## CONCLUSION

Accordingly, Valencia's motion for release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED. It is ORDERED that his sentence of imprisonment is modified to time served. It is further ORDERED that he be immediately released to begin his five-year term of supervised release. Valencia must remain in self-quarantine for the first 14 days after his release. Promptly upon his release, Valencia shall call the Probation Office to schedule an appointment.

The Clerk of Court is directed to terminate the motions at ECF Nos. 74, 78, and 81.

SO ORDERED.

Dated: May 11, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge